**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: May 28, 2019
Date Decided: July 12, 2019

A. Thompson Bayliss, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

John L. Reed, Esquire
DLA Piper LLP (US)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801

Robert S. Saunders, Esquire
Skadden, Arps, Slate,
  Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19801

Marcus E. Montejo, Esquire
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE 19801

Rudolf Koch, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Re: *In re Xura, Inc. Stockholder Litigation*
Consolidated C.A. No. 12698-VCS

Dear Counsel:

As you know, this case arises from the merger of Xura, Inc. and an affiliate of

Siris Capital Group, LLC (the "Merger"). The Merger has prompted certain Xura

stockholders to seek statutory appraisal of their Xura stock in this Court. One of

those stockholders, Obsidian Management LLC, filed a separate complaint in this Court (the "Obsidian Complaint") in which it raised breach of fiduciary duty claims related to the Merger against Xura's CEO, Philippe Tartavull, and aiding and abetting breach of fiduciary duty claims against Siris, Frank Baker, a Siris Managing Partner, and Michael Hulslander, also a principal of Siris (collectively the "Siris Defendants"). On December 10, 2018, the Court granted the Siris Defendants' motion to dismiss Obsidian's aiding and abetting claims but denied the motion to dismiss brought by Tartavull (the "Obsidian Opinion").[1] The facts relating to the Merger and Obsidian's claims against those involved in consummating the transaction are spelled out in detail in the Obsidian Opinion.

Ten days after the Court issued the Obsidian Opinion, another appraisal petitioner, Istvan Szoke, filed a complaint in this Court (the "Szoke Complaint") that is nearly identical to the Obsidian Complaint raising the same claims against the same defendants named by Obsidian, including the Siris Defendants. Unlike Obsidian, however, Szoke purports to bring his claims on behalf of a class of Xura

---

[1] *In re Xura, Inc. S'holder Litig.*, 2018 WL 6498677 (Del. Ch. Dec. 10, 2018).

stockholders.  In doing so, he acknowledges that he read the Obsidian Opinion, took note of the pleading deficiencies identified by the Court with respect to the aiding and abetting claim and then attempted to cure those deficiencies with additional pled facts in his complaint.

The Siris Defendants are not pleased.  They believed they had achieved a dismissal with prejudice and yet they now face another round of litigation relating to the same Merger-related conduct at issue in the Obsidian Opinion.  They have moved to dismiss.  Not surprisingly, their lead-off argument is that Szoke's aiding and abetting claim is barred by *res judicata*.  In this regard, they point out that Szoke and Obsidian's principal are close friends and both Szoke and Obsidian have joined together with a select few other Xura stockholders to seek appraisal.  Szoke and Obsidian are represented by the same counsel and there appears to have been some degree of coordination between the litigants.  According to the Siris Defendants, these connections justify a finding that Szoke is bound by the Court's disposition of the claims against the Siris Defendants in the Obsidian Opinion.  Alternatively, the Siris Defendants urge the Court to adhere to *stare decisis* by finding that all of the claims and issues raised by Szoke have been decided in the Obsidian Opinion.

It is tempting to take on the Siris Defendants' *res judicata* argument. The filing of the Szoke Complaint on the heels of the Court's dismissal of Obsidian's aiding and abetting claim raises legitimate concerns that may justify claim preclusion. But I need not go there for the simple reason that I am satisfied Szoke, like Obsidian, has failed to state a viable aiding and abetting claim against the Siris Defendants.[2] For that reason, the Siris Defendants' motion to dismiss must be granted.[3]

Szoke's complaint presents the same theories of aiding and abetting that were advanced in Obsidian's complaint. Specifically, Szoke alleges the Siris Defendants aided and abetted Tartavull (and perhaps other Xura fiduciaries) (collectively, the

---

[2] The Siris Defendants have also moved for fees on the ground that Szoke has engaged in bad faith litigation conduct in bringing claims against the Siris Defendants that are nearly identical to those dismissed in the Obsidian Opinion. I do not see it that way. First, Szoke is purporting to represent a class of Xura stockholders. He arguably had a duty to his fellow stockholders to take a shot at the aiding and abetting claim again. Second, Szoke has added allegations in his complaint that were not pled in the Obsidian Complaint. That I have ultimately determined those allegations are inadequate to state an aiding and abetting claim does not mean that Szoke acted in bad faith in asserting the claims to begin with.

[3] I note that Tartuvall has filed a motion to dismiss the Szoke Complaint as well. Because Szoke's claims against him mirror those found to have been adequately pled by Obsidian, I denied that motion summarily. (D.I. 388).

"Xura Fiduciaries")  in breaching their fiduciary duties because Siris consummated the Merger after: (i) knowing that Tartuvall had steered Xura into an underpriced transaction with Xura, (ii) knowing that Xura stockholders were "dissatisfied with Tartavull and that his hold on his CEO role was slipping," and then "knowingly exploit[ing]" this conflict by "deliberately induc[ing] Tartavull to believe that he would be CEO of the Company after the Merger," (iii) knowing that Francisco Partners had approached Xura about a transaction and was diverted by the Xura Fiduciaries to join Siris on the buy-side of the Merger, and (iv) facilitating the Xura Fiduciaries' allegedly inadequate public disclosures to Xura stockholders about the Merger.[4]  As noted, I determined in the Obsidian Opinion that the plaintiff there had not well-pled facts that would support any of these aiding and abetting theories.

The following chart, borrowed from the Siris Defendants' Opening Brief, lays out the allegations borrowed from the Obsidian Complaint, highlights the new aiding and abetting allegations in the Szoke Complaint (as underlined), and then compares

---

[4] *See* Szoke Compl. ¶¶ 83–84, 90, 101–104, 107, 139–140.

these allegations to the findings of inadequate pleading identified in the Obsidian

Opinion:

| Pleading Deficiency Identified in the Obsidian Plenary Complaint | Redline Excerpt Showing New Allegation in the Szoke Complaint |
|---|---|
| "Plaintiff conspicuously stops short of alleging any precedent facts, even on information and belief, from which a pleading stage adverse inference could be drawn that Tartavull told or otherwise indicated to Siris that he was in danger of losing his job if the Transaction fell through or that he was motivated to steer Xura into the Transaction for self-interested reasons." (Mem. Op. at 40) | "On information and belief, Siris knew that major Xura stockholders had expressed displeasure with Tartavull's performance and that Tartavull's hold on his job was slipping." (Szoke Compl. ¶ 83; Ex. 1, new ¶ 83)<br><br>"On information and belief, Siris deliberately induced Tartavull to believe that he would be CEO of the Company after the Merger and would receive lucrative employment benefits. By doing so, Siris knowingly exploited Tartavull's conflict to secure an ally on the inside and to obtain information from Tartavull that it could use against the Company and drive down the transaction price." (Szoke Compl. ¶ 84; Ex. 1, new ¶ 84)<br><br>"On information and belief, Baker, Hulslander and Siris knew that Xura's stockholders and its board were dissatisfied with Tartavull and that his |

| | |
|---|---|
| | hold on his CEO role was slipping." (Szoke Compl. ¶ 139; Ex. 1, new ¶ 139)<br><br>"Baker, Hulslander, and Siris each knowingly participated in Tartavull's ~~breach~~breaches of fiduciary ~~duties~~duty by …, (ii) using Tartavull's gloomy employment prospects to Siris's advantage and to the detriment of Xura's stockholders by inducing Tartavull to believe that he would receive a lucrative employment package as the Company's CEO post-merger...." (Szoke Compl. ¶ 140; Ex. 1, new ¶ 140) |
| "Plaintiff has not alleged anything to support its conclusory allegation that '[t]he Siris Defendants knew that Francisco Partners had expressed interest and [were] diverted to the buy-side of the transaction.'" (Mem. Op. at 43) | "But Francisco Partners did not bid. Instead, it somehow learned that Siris was Xura's counterparty. On information and belief, Tartavull told Franscico [sic] Partners that Siris was the Company's counterparty. Instead of submitting a competing proposal and bidding against a rival private equity firm, Francisco Partners reached out to Siris about a potential co-investment on the buy-side of the transaction. On information and belief, Siris signaled to Francisco Partners that it was open to buy-side participation to avoid a bidding war, but it told Francisco Partners that it would need to obtain approval from Xura before officially beginning discussions about a buy-side |

| | |
|---|---|
| | partnership." (Szoke Compl. ¶ 90; Ex. 1, new ¶ 90) |
| "Plaintiff's allegations that Siris somehow aided and abetted in the Board's deficient disclosures also fall short. At the outset, I note that an aiding and abetting claim based on a third-party's alleged failure somehow to *prevent* a board from providing misleading disclosures to stockholders rests on thin ice. Yet that is what Plaintiff alleges here. It has pled no facts to support an inference that Siris knowingly *facilitated* alleged disclosure deficiencies or otherwise 'knowingly participated" in that aspect of the alleged breach of fiduciary. Instead, at best, Plaintiff alleges (albeit summarily) that Siris knew certain facts and knew that the Board was not disclosing those facts to stockholders." (Mem. Op. at 42-43)<br><br>"I note Plaintiff alleges Siris Defendants aided and abetted the purported disclosure deficiencies for the first time in its Answering Brief. … The Complaint simply claims Siris Defendants aided and abetted a breach of fiduciary duty 'by engaging in direct and improper communications with Tartavull throughout the negotiations that led to the Merger.' … This alone is | "Shortly after the execution of the Merger Agreement, Xura and Siris personnel began working on a draft of the Proxy. On information and belief, Xura and Siris exchanged multiple drafts of the Proxy, and advisers for both sides were intimately involved in the drafting process. On information and belief, Xura and Siris personnel carefully reviewed and approved each portion of the Proxy, including the "Background of the Merger" section of the document. On information and belief, both Baker and Huslander [sic] were given the opportunity to comment on the Proxy, and both approved it before it was issued." (Szoke Compl. ¶ 101; Ex. 1, new ¶ 101)<br><br>"On July 12, 2016, Xura issued the Proxy. ~~But the Proxy~~It did not give the stockholders all the information they needed to properly evaluate the Merger, and it misled them in key ~~regards~~respects. The Proxy made no mention of Francisco Partners whatsoever – despite the fact that Tartavull had detailed his communications with Francisco Partners in comments *on a draft of the Proxy*. Instead, the Proxy trumpeted the |

enough to disregard the claim." (Mem. Op. at 42 n.147 (citation omitted))

"In any event, with regard to the specific disclosure violations Siris allegedly aided and abetted Xura in committing, Plaintiff has not alleged anything to support its conclusory allegation that '[t]he Siris Defendants knew that Francisco Partners had expressed interest and [were] diverted to the buy-side of the transaction.'" (Mem. Op. at 43 (alterations in original; citation omitted))

fact that Xura contacted '26 prospective buyers' and that '[n]one of the parties contacted during the go-shop process... submitted an Acquisition Proposal to the Company.' On information and belief, Siris and Xura jointly determined that the Proxy should not include any reference to Francisco Partners." (Szoke Compl. ¶ 102 (alteration in original); Ex. 1, new ¶ 102)

"The Proxy also failed to mention a number of meetings and direct communications between Tartavull and Siris, including the February 24, 2016 meeting at which they discussed price and other sensitive topics. As a result, the Proxy painted an inaccurate picture of the nature and frequency of communications between Tartavull and Siris. On information and belief, Siris personnel commented on the Proxy's portrayal of the negotiating process and were intimately involved in determining what should and should not be disclosed." (Szoke Compl. ¶ 103; Ex. 1, new ¶ 103)

"The Proxy described the Strategic Committee as a committee the board created to 'review, evaluate and negotiate the terms of a potential transaction with Siris and to make certain decisions between meetings of the board of directors.' On information

| | |
|---|---|
| | and belief, Xura and Siris jointly determined to describe the Strategy [sic] Committee in this way. But in fact, as both the Company and Siris knew perfectly well, the Strategic Committee never met with Siris, never took formal action, and was just a forum in which Tartavull raised questions or concerns about the business generally." (Szoke Compl. ¶ 104; Ex. 1, new ¶ 104)<br><br>"On information and belief, personnel from Xura and Siris jointly developed the Supplemental Proxy. Baker and Hulsander [sic] were afforded the opportunity to comment on the Supplemental Proxy, and, on information and belief, they approved the Supplemental Proxy before it was issued." (Szoke Compl. ¶ 107; Ex. 1, new ¶ 107)<br><br>"Baker, Hulslander, and Siris each knowingly participated in Tartavull's breachbreaches of fiduciary dutiesduty by … (iii) knowingly participating in the drafting and dissemination of inaccurate and misleading disclosures contained in the Proxy and the Proxy Supplement." (Szoke Compl. ¶ 140; Ex. 1, new ¶ 140) |

What is clear from this comparison is that Szoke has attempted to plug in the pleading gaps the Court identified in the Obsidian Opinion principally with allegations based "on information and belief." This is so even though Szoke, and his counsel, have had access to a fully developed discovery record in the Obsidian appraisal and fiduciary duty actions for months.[5] Pleading serial facts "on information and belief" is no substitute for well-pled facts that will support a reasonable inference of wrongdoing.[6]

What is lacking in the Szoke Complaint is what was lacking in the Obsidian Complaint—well-pled allegations that Siris "knowingly participated" in the Xura Fiduciaries' alleged breaches of fiduciary duty.[7] "Knowing participation" means

---

[5] Fact discovery in this consolidated action is complete or nearly complete. Trial will commence on October 7, 2019.

[6] *See In re Coca-Cola Enters., Inc.,* 2007 WL 3122370, at *4 n.28 (Del. Ch. Oct. 17, 2007) ("[i]f a complaint were held sufficient simply because it restates the legal elements of a particular cause of action, Rule 8(a) would be rendered meaningless. Plaintiffs need not offer prolix tales of abuse belabored by needless details, but plaintiffs must allege *facts* sufficient to show that the legal elements of a claim have been satisfied."), *aff'd sub nom. Int'l Bhd. Teamsters v. Coca-Cola Co.,* 954 A.2d 910 (Del. 2008); *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 181 (Del. Ch. 2010) (dismissing complaint on *stare decisis* grounds upon concluding that the new complaint did not plead new facts "beyond what [was] previously considered.").

[7] *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001).

just that—the alleged aider and abettor must know the fiduciary is breaching his fiduciary duty and then must participate, in some way, in that breach.[8] The Szoke Complaint, like the Obsidian Complaint, falls short on both fronts. First, there are no well-pled allegations that, as it negotiated and eventually consummated the Merger, Siris (and its negotiators) knew: (1) Tartuvull would be terminated as CEO but for the Merger such that they could exploit that fact (by offering post-Merger employment) to provoke Tartuvull to facilitate their low ball offer; (2) the Xura Fiduciaries had directed Francisco Partners to withdraw its expression of interest to acquire Xura on its own so that it could join Siris in its bid; or (3) Xura had failed to provide adequate disclosures regarding the Merger to its stockholders.[9] Second,

---

[8] *Binks v. DSL.net, Inc.*, 2010 WL 1713629, at *10 (Del. Ch. Apr. 29, 2010). *See also* Restatement (Second) of Torts §876 ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself").

[9] *See In re Volcano Corp. S'holder Litig.*, 143 A.3d 727, 750 (Del. Ch. 2016) (noting that the standard for pleading the "requisite scienter" in connection with the "knowing participation" element of aiding and abetting imposes a "high burden"), *aff'd*, 2017 WL 563187 (Del. Feb. 9, 2017) (TABLE); *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986) (dismissing aiding and abetting claim against acquirer based on the acquirer's alleged knowing participation in false disclosures upon finding that

there are no well-pled allegations that the Siris Defendants "participated" in any breach of fiduciary duty by giving "substantial assistance or encouragement" to any of the Xura Fiduciaries.[10]  In this regard, it is not enough to allege that Siris drove a hard bargain.[11]  Instead, Szoke was obliged to allege facts that would allow a reasonable inference that the Siris Defendants took steps to assist the Xura Fiduciaries in breaching their fiduciary duties knowing that the breaches were occurring and knowing that they were assisting in those breaches.  The Szoke Complaint falls short of this mark.[12]

---

plaintiff had not pled that the acquirer knew the disclosures were misleading or that it participated in the fiduciaries' decision to make the disclosures).

[10] *See* Restatement (Second) of Torts §876(b); *see also Malpiede*, 780 A.2d at 1097 n.78 (citing Restatement (Second) of Torts §876(b) with approval); *Prairie Capital III, LP v. Double E Hldg. Corp.*, 132 A.3d 35, 63 (Del. Ch. 2015) (same).

[11] *See Tomczak v. Morton Thiokol, Inc.,* 1990 WL 42607, at \*16 (Del. Ch., Apr. 5, 1990) ("Although Dow's purchases certainly had the effect of putting economic pressure on Morton Thiokol, what Dow essentially did was to simply pursue arm's-length negotiations with Morton Thiokol through their respective investment bankers in an effort to obtain Texize at the best price that it could."); *Weinberger v. United Fin. Corp. of Cal.,* 1983 WL 20290, at \*13 (Del. Ch., Oct. 13, 1983) (refusing to impose liability on sponsor of a tender offer who negotiated aggressively with target at arm's-length to obtain the best price possible).

[12] For the reasons stated in the Obsidian Opinion, I reject again the argument that the Court should draw adverse inferences at the pleadings stage against the Siris Defendants based on the Szoke Complaint's allegations of spoliation of evidence.  The Obsidian Opinion

Based on the foregoing, Siris' motion to dismiss the aiding and abetting claim,

Count II of the Szoke Complaint, must be granted.[13]

**IT IS SO ORDERED.**[14]

Very truly yours,

*/s/ Joseph R. Slights III*

---

held that Obsidian had "conspicuously stop[ped] short of alleging any *precedent facts*, even on information and belief, from which a pleading stage adverse inference could be drawn that Tartavull told or otherwise indicated to Siris that he was in danger of losing his job if the Transaction fell through or that he was motivated to steer Xura into the Transaction for self-interested reasons." *In re Xura, Inc. S'holders Litig.*, 2018 WL 6498677, at *9 n.92 (emphasis added)). As noted in the Obsidian Opinion, the inferences a plaintiff asks the court to draw at the pleading stage must be reasonable and they must be grounded in pled facts. *Id.* at *9 n.92, *14 n.139. No such reasonable inferences, adverse or otherwise, are supported by any of the new "facts" pled in the Szoke Complaint.

[13] I acknowledge Szoke's letter dated June 24, 2019 (D.I. 417), submitted well after oral argument on this motion, in which Szoke's counsel describes at some length certain documents produced by Francisco Partners, and then states that Szoke intends to file a motion for leave to file a second amended complaint. I also acknowledge, and agree with, the Siris Defendants' June 25, 2019 letter (D.I. 419) in which they point out that Szoke's June 24 letter is an improper substitute for a proper motion for leave to amend. More than two weeks have passed since Szoke's June 24 letter, and he has not filed his motion for leave to amend. Because I have concluded that the June 24 letter is not a proper means by which to amend or supplement a pleading, I have not considered the contents of that letter in deciding this motion.

[14] In light of the close proximity of trial, the Siris Defendants shall respond to all ordered, pending (or agreed to) party discovery as if they remained in this case as parties.